# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

103   379
f109    82
f109   381

Norfolk Railway & Light Co. v. Spratley.

January 12, 1905.

Absent, Cardwell, J.

1. Electric Companies—*Dangerous Appliances—Care Required—Fallen Wires—Presumption.*—While electric companies are not insurers against accidents, they should be held to a high degree of care in the construction and maintenance of the dangerous appliances employed by them, to the end that travellers along the highway may not be injured. The danger is great, and care and watchfulness must be commensurate with it. The mere fact that a dangerous wire has broken and fallen into the street raises a presumption of negligence.

2. Electric Companies—*Fallen Wires—Presumption of Negligence—Inspection.*—The fact that a child walking along a city street is injured by coming in contact with a live electric wire which had fallen into the street two hours previously, raises a presumption of negligence on the part of the company owning the wire.. *Res ipsa loquitur.* This presumption is not overcome by the testimony of a lineman of the company that he had looked over the wire on the morning of the day of the accident and found it all right, but upon the whole evidence the question of negligence is one for the jury.

3. New Trial—*Receiving Illegal Evidence—When Harmless.*—This court will not reverse a judgment because of the action of the trial court in receiving illegal or improper evidence, where it appears that the case was otherwise completely made out, and the illegal evidence did not and could not have affected the result, nor where the same evidence was subsequently given in by other witnesses without objection.

4. Electric Companies—*Fallen   Wires—Insulation—Injury—Proximate*

*Cause.*—Where an injury is inflicted by coming into contact with an electric wire which has broken and fallen into the street, and which is not properly insulated, the falling of the wire is the proximate cause of the injury, and not the want of insulation.

5. PERSONAL INJURIES—*Damages—Future Effects of Injury.*—In an action to recover damages for personal injuries inflicted through negligence of the defendant, it is not error to allow the attending physician to testify as to the probable future effects of the injury; nor to instruct the jury that, in assessing damages, they can take into consideration "such as will naturally, reasonably and probably result to the plaintiff as a consequence of his injuries."

6. APPEAL AND ERROR—*Evidence at Trial—Failure to Object.*—Objection to the admission of evidence in the trial court cannot be raised for the first time during an oral argument in this court.

7. EXCESSIVE VERDICT.—A verdict in an action for personal injuries will not be set aside as excessive when there is no suggestion that the jury was actuated by prejudice or partiality.

Error to a judgment rendered by the Court of Law and Chancery of the city of Norfolk, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Richard B. Tunstall,* for the plaintiff in error.

*Hugh Gordon Miller, Daniel Coleman* and *L. L. Lewis,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

On the 14th day of June, 1903, a clear, bright day, Herbert Wesley Spratley, an infant seven years of age, in company with his little sister and their little companion, Mabel Blair, were *en route* to the cemetery in Berkley, a suburb of the city of Norfolk. While passing along Liberty street, Herbert was in-

jured by coming in contact with a charged electric wire, owned by the plaintiff in error, which had fallen across the sidewalk about two hours before the accident.   He was playing with his sister, and thinking the wire was a switch, picked it up to hit her, with the result that he was severely shocked and burned about his head, hand and leg, and was rendered unconscious. These injuries confined him to the bed for four weeks, and to the house for six weeks or more.

This suit was brought by the injured child in the name of J. W. Spratley, as next friend, against the defendant company to recover damages for the injuries mentioned, and upon a demurrer to the evidence judgment was rendered in favor of the plaintiff for the sum of $2,000, the amount ascertained by the verdict of the jury.   A writ of error was awarded, which brings the case to this court for review of errors alleged to have been committed at the trial.

It is contended that the demurrer to the evidence should have been sustained, because the defendant company was not shown to have been guilty of negligence.

This is a clear case for the application of the common sense rule of evidence expressed in the maxim, *"res ipsa loquitur."* While electric companies are not held to be insurers against accident, still it is due to the citizen that such companies, permitted as they are to use for their own purposes the streets of a city or town, should be held to the exercise of a high degree of care in the construction and maintenance of the dangerous appliances employed by them; to the end that travellers along the highway may not be injured.   The danger is great, and care and watchfulness must be commensurate with it.   *Haynes* v. *Raleigh Gas Co.*, 114 N. C. 203, 19 S. E. 344, 26 L. R. A. 810, 41 Am. St. 786; *City Elec. St. R. Co.* v. *Connery* (Ark.), 33 S. W. 426, 31 L. R. A. 570, and note p. 568; Joyce on Electricity, secs. 438, 606.   A consequence of this rule, as to the high

degree of care required in the use of a dangerous current of electricity is the presumption of negligence that is raised by the fact that a dangerous wire has broken and fallen into the street. But it is insisted that the testimony of the witness, Wiggins Fuller, introduced by the plaintiff, showed that the defendant company had exercised due care, and that this proof did away with the presumption afforded by the accident itself, and rendered some other evidence of negligence essential to the plaintiff's case.    The testimony mentioned is that of an adverse witness, called, as such, by the plaintiff to prove the ownership of the wire in question, and that the witness had repaired it. Upon cross-examination by the defendant company, the witness testified that he was not the inspector, but was a lineman; that he looked over the wires every day, and that between six and seven o'clock in the morning of the day of the accident he had looked over this wire and found it all right.

This evidence was not sufficient to remove the presumption of negligence arising from the accident itself.    Upon the whole evidence the question was one for the jury.

In *Uggla* v. *West End St. R. R. Co.*, 160 Mass. 351, 35 N. E. 1126, 39 Am. St. 481, the plaintiff was struck by part of an iron ear, used to clasp a trolley wire to keep it in place around a curve over the defendant's track.    There was no evidence of fault on the part of the defendant other than that afforded by the accident itself.    There was, however, evidence introduced by the defendant, that it was not negligent, tending to show that the break was a clean one, bright in color and appearance; that the iron was sound all through, with no flaw or defect in it; that the whole apparatus was manufactured and put up by a manufacturer of the highest reputation; that the ear and guy constituted the best and strongest device known at the time for keeping trolley wires in place; that the defendant employed a corps of competent superintendents, foremen and inspectors,

who inspected the whole line weekly, including the cars and their attachments; and that this particular part of the line had been inspected within a week prior to the accident. Notwithstanding this evidence of due care on the part of the defendant, the plaintiff was not called upon to introduce other evidence of negligence than the accident itself, the court holding that upon the whole evidence the question was for the jury, and sustained their verdict in favor of the plaintiff.

The presumption of negligence arising from an injury to a passer-by in a public street from a broken electric wire is not overcome, so as to require the case to be taken from the jury, by testimony of defendant's employees that the wire was properly constructed and put up. *Boyd* v. *Portland General Cement Co.* (Or.), 66 Pac. 576, 57 L. R. A. 619.

The declaration in the case at bar, after setting out the duty of the defendant company to so operate, control and maintain its wires that they would not fall upon, or come in contact with, pedestrians lawfully upon and passing along a public street and highway, avers that the defendant, in disregard of its duty in that behalf, so carelessly and negligently maintained, controlled, and operated its wire that it was broken, and negligently permitted to fall from the poles, and negligently permitted to remain upon the street, charged with an electric current, and that by reason of this negligence the wire came in contact with the plaintiff, and he was thereby severely shocked, burned, etc. At the conclusion of the testimony of George W. Wiggins, a witness for the plaintiff, he was asked the following question: "Did you notice the condition of that wire, whether it was an old or new wire, or whether the insulation was on or off?" The witness answered that the insulation was off in a great many places, but that he did not know whether the wire was old or new. A motion to strike out this answer was overruled, and this action of the court is assigned as error.

It is contended that the declaration did not aver imperfect insulation as a ground of negligence, and that evidence tending to show lack of insulation could not therefore be introduced. On the other hand it is most earnestly ·and with· much force insisted that such evidence was admissible under the averment that the defendant negligently maintained its wire.·

To properly maintain this electric wire would seem to include proper insulation, but it is insisted that the declaration limits the negligence in maintaining to preventing the wire from falling. In our view a consideration of this question is not necessary. Under the rule *res ipsa loquitur,* the plaintiff's case was made out. The wire was down and across the sidewalk, and the child grasped it in the palm of his hand and was injured. When the plaintiff has established the fact of ownership and control of the wire, and its dangerous condition in a public street or highway, coupled with the accident, he has made out a *prima facie* case of negligence, and cast the. burden upon the defendant to show that the wire was broken and remained in such condition until the accident, without its fault. *Haynes* v. *Raleigh Gas Co., supra; Western Union Tel. Co.* v. *State, for, &c.* 82 Md. 293, 33 Atl. 763, 31 L. R. A. 572, 51 Am. St. 464; *Wiley* v. *Boston Elec. Co.,* 168 Mass. 40, 46 N. E. 395, 37 L. R. A. 723; *Trenton Pass. R. Co.* v. *Cooper* (N. J.), 37 Atl. 730, 38 L. R. A. 637, 64 Am. St. 592; *Richmond Ry., &c. Co.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736.

The question and answer objected to were not essential to the plaintiff's case. His case was completely made out without it.

In *Morotock Ins. Co.* v. *Fostoria Novelty Co.,* 94 Va. 361, 26 S. E. 850, it is held that, although a question asked the witness and his answer thereto are illegal and improper, yet if the propounder's case has been completely made out without such question and answer, and the admission of the answer did not and could not affect the result, it is harmless error, and the appellate

Opinion.

court will not, for this cause, reverse the judgment of the lower court.

Further, the question and answer under consideration were without prejudice to the defendant company, because its own evidence tended just as strongly to show that the wire was not properly insulated.

In *Taylor* v. *Mallory*, 96 Va. 18, 30 S. E. 472, it is held that, although an exception to the testimony of a witness may be well taken, if the same fact is subsequently proved by other witnesses without objection, the error will be deemed to be harmless. See also *Va. & S. W. Ry. Co.* v. *Bailey*, ante p. 205, 49 S. E. 33.

The defendant further contends that its demurrer to the evidence should have been sustained because the proximate cause of the injury was the lack of insulation, and the declaration did not contain a specific allegation that the wire was not insulated. In support of this contention the defendant company relies upon its witness, T. F. Newberry, who testified that two colored women passing along the sidewalk were struck in the face by the wire and flirted it out of the way without being injured. This witness also testified that he saw the little boy while standing on the lot by the sidewalk take hold of the wire, and that he grasped it at a point where it was not insulated. The witness further says that he thinks that he (the witness) took hold of the wire at a point where it was insulated without being hurt. The clear inference from this evidence introduced by the defendant is that the wire was not maintained as to its insulation; that the insulation was off at some points and on at others; and consequently that the two colored women were not injured, because they were struck by the wire at a point where it was insulated, while the child, as shown by the witness, grasped the wire at a point where it was not insulated. We see nothing in this evidence to establish the contention that the lack of insulation was the proximate cause of the accident. The want of

insulation would have been harmless had not the wire fallen. It was the negligence of the defendant company in allowing the wire to fall and remain across the sidewalk, and not the lack of insulation, that was the proximate cause of the accident. Had not the wire fallen, it could have remained on the pole in the air uninsulated indefinitely without injury to any one. So that it was the falling of the wire that brought about the injury sustained by the plaintiff.

It is further contended by the plaintiff in error that the court below erred in allowing Dr. Lankford to testify as to the probable future effects of the injuries sustained by the plaintiff, and in not striking out evidence as to such future effects.

In *Watson on Personal Injuries*, sec. 604, p. 720, it is said: "An exception to the rule excluding opinion evidence exists where it is desired to show by properly qualified experts the nature or extent of the plaintiff's injuries, and their probable permanency or the reverse. 'There is,' indeed, it has been said, 'no evidence other than that of experts by which courts and juries can determine whether a disease or an injury has or can be permanently cured, or what its effect will be upon the health and capability of the injured person in the future.' It is competent, therefore, for the physician who attended the plaintiff during the period of treatment for the injuries received, to give his opinion as to the effect of the injuries received by the plaintiff upon his future condition, or to state from his experience and medical knowledge the probability of the recurrence of inflammation in an injured muscle. And a physician may also testify, in a general way, that there is a probability that certain conditions, caused by the injuries and shown to exist at the time of the trial, will produce still more serious results in the future, or may be requested to express his opinion as to the probable effect of the injuries on the plaintiff's general health, or may be asked whether, in his opinion on the

facts shown, if certain conditions exist two years after the acci-dent, they will probably be permanent."

In *Toledo Ry. Co.* v. *Badeley,* 54 Ill. 19, 5 Am. Rep. 71, it was held to be proper for qualified experts to testify as to the probable effect of the injuries received by the plaintiff upon his future condition.

Any evidence tending to show the character and extent of the injury, and its probable results, and the probability of an injury leaving permanent effects of an injurious nature is competent. A question, therefore, to a physician, asking him to state from his experience and medical knowledge the future effects likely to result from an injury, is proper. *Filer* v. *N. Y. R. R. Co.,* 49 N. Y. 42.

This court, in the case of *Richmond P. & Power Co.* v. *Robinson,* 100 Va. 394-400, 41 S. E. 719, in discussing the measure of damages, said the amount in question could not be considered as unreasonable compensation for such physical pain and suffering as the plaintiff experienced, or was *likely* to ex-perience. Such inconvenience, discomfort, and mental suffer-ing as might have been entailed upon him by the injuries and consequent disability were also to be considered.

In the light of these authorities, we are of opinion that there was no error in permitting the witness, Dr. Lankford, to testify as to the probable future effects likely to result from the in-juries sustained by the plaintiff.

It is further asserted that the court erred in its instruction to the jury touching the measure of damages. The objection urged to this instruction is that it told the jury they should take into consideration, in addition to the expenses and pain and loss already incurred and suffered, such as would naturally, reasonably and probably result to the plaintiff as a consequence of his injuries.

The objection made to this instruction has been practically

disposed of by what has been said in dealing with the last-
mentioned assignment of error in regard to the introduction of
expert evidence as to the probable future effects of the injuries
sustained by the plaintiff.

In *Watson on Personal Injuries*, sec. 384, p. 478, the learned
author, in discussing the propriety of an instruction embodying
the element of damage here objected to, says: "But it is not
perceived why the probability or likelihood or reasonable ex-
pectation of the future suffering does not satisfy the rule of
reasonable certainty, and such is believed to be the weight of
the best considered cases. An instruction so worded, indeed,
would seem to be preferable to one simply stating the require-
ment to be reasonable certainty, because in the former case the
jury would be advised in some measure as to what constitutes
reasonable certainty. It has been held, accordingly, that a jury
may be properly instructed to give damages for such future
suffering as the plaintiff will probably endure, or 'in any rea-
sonable probability will hereafter sustain.' And in an action
for personal injuries where proof of future effects with cer-
tainty was impossible, and reasonable probabilities were neces-
sarily the basis of the medical opinions, it was held proper to
charge that damages could be awarded for 'such consequences
as are reasonably likely to ensue,' and all pain and suffering
which the plaintiff 'in reasonable probability will hereafter sus-
tain.' In the Supreme Court of Arkansas, the following in-
struction was approved in an action for assault and battery:
'If the jury find for the plaintiff, it will be their duty to con-
sider whether or not the plaintiff is *likely* to suffer in the future
from the effects of the wound received at the hands of defend-
ant; . . . and if they find in the affirmative it will be
their duty to assess a sum equivalent to the injuries and suf-
ferings, as they find from the evidence, he is *likely* to suffer in
the future."

We are of opinion that in the case at bar the court committed no error in telling the jury that they could take into consideration in assessing damages "such as will naturally, reasonably and probably result to the plaintiff as a consequence of his injuries."

Mrs. Rosa Spratley, the mother of the plaintiff, introduced on his behalf, was asked: "Has any money been expended for medicine?" and answered, "I spent, I think, in the neighborhood of seven dollars. I don't know whether it was that much or any more. I did not keep a strict account." It is contended in the oral argument before this court that the admission of this question and answer was error for which the judgment should be reversed, because the plaintiff could not recover except for such expenses as he had himself incurred, whereas the answer showed that the mother had expended the sum mentioned.

If consideration of this question were not precluded by the maxim *"de minimis non curat lex,"* the contention would not be tenable in view of the instruction given, which expressly limits the consideration of the jury to such necessary expenses as the plaintiff himself incurred for medicine. But apart from these considerations, this question cannot be raised for the first time in oral argument before this court. No exception was taken to the evidence at the time the question was asked. No bill of exception was subsequently asked for on the subject, and there is no mention of such an assignment of error in the petition to this court for a writ of error. It is well settled that under such circumstances it is too late to now make the introduction of this evidence a ground for setting aside the verdict of the jury.

It is further assigned as error that the damages allowed by the verdict of the jury are excessive.

There is not a suggestion in the record that the jury were actuated by prejudice or partiality, and, therefore, upon well

settled principles their verdict cannot be disturbed. *Norfolk & W. R. Co.* v. *Shott,* 92 Va. 34, 22 S. E. 811; *Richmond Ry. & Elec. Co.* v. *Garthright,* 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. 839.  In the last named case it is said: "No method has yet been devised, nor scales adjusted, by which to measure or weigh and value in money the degrees of pain and anguish of a suffering human being, nor ever likely to be;" that unless the finding of the jury is so great as to furnish ground for believing that they were actuated by partiality or prejudice, the court should not, under the well settled rule in this State, disturb the verdict.

Upon the whole case we are of opinion that the judgment complained of must be affirmed.

*Affirmed.*